IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : Case No. 1:15-CR-0169 |
| v. | : |
| | : Judge Sylvia H. Rambo |
| **MURRAY ROJAS** | : |

## M E M O R A N D U M

Before the court is a motion to suppress statements given by Defendant Murray Rojas ("Defendant") to an agent with the Federal Bureau of Investigations ("FBI") on April 7, 2015. (Doc. 19.) The government opposed the motion, and a hearing was held on January 6, 2016. For the reasons that follow, the motion will be denied.

## I.   Background

Defendant was indicted by a grand jury on August 12, 2015 on four counts of wire fraud and one count of conspiracy. (Doc. 1.) Prior to the indictment, Defendant met with FBI special agent Bruce Doupe ("Agent Doupe"), who was pursuing investigations into violations of the laws of the Commonwealth of Pennsylvania and the rules and regulations of the Pennsylvania Racing Commission. The FBI had an interview with Defendant on October 4, 2012 as well as brief, periodic contacts with her leading up to the April 7, 2015 interview. Statements made by Defendant at that April 7, 2015 are the subject of the instant motion.

Defendant claims that the April 7, 2015 interview violated her Fifth amendment right against self-incrimination as well as her *Miranda* rights to remain

silent and terminate her interview with law enforcement until she could have counsel present at the interview. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

### A.     Facts[1]

At the suppression hearing, Agent Doupe testified that his first formal interview of Defendant was conducted on October 4, 2012. In the interim between that interview and the one that took place on April 7, 2015, Agent Doupe had sporadic, informal contacts with Defendant, none of which were memorialized in a report. On approximately April 5 or 6, 2015, Agent Doupe contacted Defendant and requested that she come to the FBI office in the Federal Building in Harrisburg, Pennsylvania for an interview. On April 7, 2015, Defendant voluntarily appeared as requested.

According to Agent Doupe's unrefuted testimony, he thanked Defendant at the outset of the interview for her cooperation and willingness to be interviewed, and advised her that she was free to terminate the interview and leave at any time. He also advised Defendant that all of her answers must be truthful, and that any false statements could result in criminal charges. (Ex. 1, p. 1.) Agent Doupe then began inquiring into the "drugging" or "juicing" of race horses on race day. Defendant was asked whether she had violated any rules concerning racing and she replied "I don't know, I don't think so." (*Id.*) She was reminded that false answers could result in criminal charges, and was asked when was the last time she "treated" a horse illegally. Defendant then said, "I think I need an attorney." (*Id.*) Agent Doupe then advised Defendant that the interview was terminated until she

---

[1] The facts are taken from the testimony of Agent Doupe and his 302 report summarizing the April 7, 2015 interview. (Ex. 1.) No other witness testified at the suppression hearing, and no other exhibits were entered.

could consult with an attorney. Defendant replied that she both could not afford and did not want to pay for an attorney, but Agent Doupe repeated that the interview was terminated. However, Defendant requested that the interview continue. Before recommencing the interview, Agent Doupe asked Defendant if she wished to continue without an attorney, and she replied "yes." (*Id*. at p. 2.)

**III.     Discussion**

Defendant claims that the statements she made at the April 7, 2015 interview were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, Defendant argues that the interrogation should have ceased upon her invocation of her right to obtain counsel, but that Agent Doupe continued to question her. Additionally, Defendant raised another argument at the suppression hearing not raised in her motion to suppress – one of "psychological coercion." Defendant claims that at the October 2012 interview she was advised that the information she gave would be kept confidential by the FBI. At the April 2015 interview, Defendant was advised that if she lied or gave false information she could face criminal charges. Defendant claims that because she was not told at the outset of the April 2015 interview that any truthful information that she gave could lead to criminal charges against her, she was tricked by Agent Doupe into incriminating herself, and, therefore, "psychologically coerced."

The government argues that Defendant does not allege she was in custody, subject to custodial interrogation, or that she believed she was not free to leave or terminate the interview at any time. (Doc. 26, p. 3.)

### A. *Miranda* Rights

In *Miranda*, the United States Supreme Court established the rule that individuals who are in custody and being questioned by law enforcement must be advised of their rights: 1) to remain silent, 2) to counsel, 3) to terminate an interview at any time, and 4) to have counsel appointed to represent them. *Miranda*, 384 U.S. at 444. The operative words in *Miranda* are "in custody." It is undisputed that Defendant voluntarily appeared for the April 2015 interview and was advised that she could leave or terminate the interview at any time. (Ex. 1, p. 1.) Based on the undisputed testimony of Agent Doupe, Defendant has failed to meet the "in custody" requirement under *Miranda*.

Defendant claims, nonetheless, that when she made the statement, "I think I need my attorney," the interview should have terminated. The undisputed testimony, however, reflects that each time Defendant mentioned an attorney, Agent Doupe told her that the interview was terminated and that she was free to leave. It was at Defendant's insistence that the interview continued without an attorney. (*Id*. at pp. 1-2.) Indeed, the interview recommenced only after Agent Doupe asked Defendant to confirm that she wished to continue the interview without counsel present, and she responded, "yes." (*Id*. at p. 2.) Prior to that acquiescence, Defendant was aware that she could freely terminate the interview and leave.

### B. Coercion

The crucial element in determining the voluntariness of statements given to law enforcement is "coercion." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (citing *Colorado v. Connelly*, 419 U.S. 157, 164 (1986)). "[C]oercive activity includes 'trickery, psychological pressure or mistreatment.'" *United States*

*v. Griggie*, 105 F. App'x 431, 435 (3d Cir. 2004) (quoting *Withrow v. Williams*, 507 U.S. 680, 708 (1993)).  Where an interrogation is noncustodial, the court considers "the effect that the totality of the circumstances had upon the will of the defendant." *United States v. McNaughton*, 848 F. Supp. 1195, 1200 (E.D. Pa. 1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 226-27 (1973)).  The key "issue is whether the defendant's will was overborne when he made incriminating statements." *Id*. (citing *Schneckloth*, 412 U.S. at 225-26).

Here, Defendant's claim that she was subject to "psychological coercion" that rendered her statements involuntary and therefore suppressible is based on the statements made by Agent Doupe at the initial October 4, 2012 interview and the April 7, 2015 interview.  At the 2012 interview, Defendant claims that Agent Doupe told her that any information she gave to the FBI would be kept confidential, which Defendant took to mean would not result in criminal charges against her.  This lead her to believe that any future statements would have the same protection.  While it is true that "there are times when promises of leniency or confidentiality made by a law enforcement officer can justify a finding that the defendant's will was overborne and any statement made as a result of those promises was involuntary," *id*. at 1200-01 (citing *U.S. v. Walton*, 10 F.3d 1024, 1028-29 (3d Cir. 1993)), that is simply not the case here.  In his testimony, Agent Doupe stated that, at the 2012 interview, he only told Defendant that the information she gave would be held in confidence by the FBI, and never made any further promises regarding criminal charges.  Agent Doupe's promise of confidentiality was to assuage Defendant's concerns that the information solicited by the FBI would not be shared with the Pennsylvania Racing Commission, and nothing more.

At the 2015 interview, Defendant was told that "all answers must be truthful and any false statements could result in criminal charges." (Ex. 1 at p. 1.) The warning about false statements was given at the beginning of the conference and again after Defendant gave an inconclusive and possibly evasive answer to a question. It is difficult for this court to comprehend how "psychological coercion" could result from Agent Doupe's warning to Defendant against making false statements. Defendant claims that the warnings against giving false statements confused her and she thought that she would not be prosecuted for truthful information she gave related to the underlying investigation. This purported belief, however, is belied by Defendant's own statement at the 2015 interview, when she said, "I don't want to spend a lot of money on a lawyer; I have to figure that I am going to be indicted." (*Id.* at p. 2.)

As noted above, the Third Circuit has held that coercion can be found where there is "trickery, psychological pressure or mistreatment" by law enforcement. *Griggie*, 105 F. App'x at 435 (citation omitted). Defendant makes no allegation of mistreatment in the present case, and the court cannot see how Agent Doupe's statements about confidentiality in 2012 and possible prosecution for false statements in 2015 could constitute trickery or psychological pressure.

**IV.     Conclusion**

Under the totality of the circumstances surrounding the April 7, 2015 interview, the court finds that Defendant was not in custody and that the interview was not tainted by trickery, psychological pressure or mistreatment. Accordingly,

Defendant's statements at the April 7, 2015 interview were made voluntarily and, therefore, the motion to suppress will be denied.

      An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated: January 12, 2016.