IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:15-CR-00169 |
| | : | |
| v. | : | |
| | : | |
| **MURRAY ROJAS** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Presently before the court is Defendant's Renewed Motion for the Entry of a Judgment of Acquittal (Doc. 144) pursuant to Federal Rule of Criminal Procedure 29. For the reasons stated herein, Defendant's motion will be denied.

### **I.     Relevant Facts and Procedural History**

A twenty-one count Second Superseding Indictment (the "Indictment") was returned on February 8, 2017, charging Defendant with several violations of federal law, including wire fraud, conspiracy to commit wire fraud, and administering misbranded drugs to racehorses and conspiracy to do the same, arising out of Defendant's alleged direction to others to administer prohibited substances to racehorses before more than forty separate horse races at Penn National Race Course in Grantville, Pennsylvania.  (*See* Doc. 78.)

At trial in this matter, the jury heard testimony from veterinarians Kevin Brophy, Fernando Motta, and Christopher Korte, as well as staff members at their veterinary clinic, establishing that Defendant directed them to administer

prohibited substances, including prescription drugs, to Defendant's racehorses within twenty-four hours of those horses running in races at Penn National. The Government also provided medical and billing records from the veterinary clinic showing what substances were given to which horses, and elicited testimony from the veterinarians and their staff about the practice of backdating the records so as to make it appear that the substances were not given to the horses within twenty-four hours of running in a race. Based on, *inter alia*, this evidence, at the conclusion of trial the jury returned a verdict of guilty as to Counts 8 through 20 of the Indictment, for misbranding of animal drugs in violation of 21 U.S.C. §§ 331(k), 353(f)(1)(c), and 333(a)(2), as well as to Count 21, for conspiracy to misbrand animal drugs in violation of 18 U.S.C. § 371. The jury found Defendant not guilty of the wire fraud charges contained in Counts 1 through 7. Defendant then moved for acquittal as to Counts 8 through 21 pursuant to Federal Rule of Criminal Procedure 29 (Doc. 132), which the court denied.

Presently before the court is Defendant's renewed motion for judgment of acquittal pursuant to Rule 29. (Doc. 144.) Defendant submitted a brief in support of its motion (Doc. 147), which the Government timely opposed (Doc. 145). The court granted extensions of time for the filing of reply briefs, including leave to file both a sur-reply by the Government and a response to the sur-reply by Defendant.

(*See* Docs. 150, 151, 153, 154, 157, 158 & 159.) Thus, the motion has been fully briefed and is now ripe for disposition.

**II.** **Legal Standard**

Federal Rule of Criminal Procedure 29 provides that "the court may set aside the verdict and enter an acquittal" for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). In determining a Rule 29 motion, the key question for the court is whether "a reasonable jury believing the Government's evidence could find beyond a reasonable doubt that the Government proved all the elements of the offenses." *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991). While making this inquiry, the court "must view the evidence in the light most favorable to the [G]overnment and may not weigh the evidence or make credibility determinations." *United States v. Riccio*, Civ. No. 06-cv-0702, 2008 WL 2954754, *1 (E.D. Pa. July 31, 2008) (citing *United States v. Greenridge*, 495 F.3d 85, 93 (3d Cir. 2007)). A defendant seeking to overturn a jury verdict pursuant to Rule 29 bears "a very heavy burden," *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997), and relief should be granted only in "cases where the prosecution's failure is clear." *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

## III. Discussion

Although Defendant propounds several bases for relief under Rule 29 throughout the nimiety of briefing on this motion, Defendant's request can be distilled into a single argument: the words "administer" and "dispense" have different meanings under the Federal Drug and Cosmetic Act (the "Act"); only dispensing, and not administering, can support a charge for misbranding; and, the Government did not establish that Defendant caused animal drugs to be dispensed under the Act.

As discussed in the court's memorandum regarding Defendant's pretrial motion to dismiss the misbranding charges, the Act:

> prohibits the doing of any act that causes a drug to become misbranded after it has moved in interstate commerce and while it is held for sale. 21 U.S.C. § 331(k). The Act defines several ways in which a drug can become misbranded, among which is if a drug's labeling lacks "adequate directions for use." 21 U.S.C. § 352(f). Adequate directions are defined in the regulations accompanying the Act as those under which a layman could use the drug safely and for its intended purpose. *See* 21 C.F.R. § 201.5. Because all of the drugs that the Indictment charges Defendant with misbranding are prescription drugs, they are not available for use by laymen and instead may only be used "under the supervision of a licensed veterinarian." 21 U.S.C. §353(f)(1)(A). Thus, prescription drugs are only exempt from the Act's requirement that they be labeled with adequate directions for lay use if they are dispensed upon a written prescription or "the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice." 21 U.S.C. §

4

> 353(b)(1). The dispensing of a prescription drug to an animal in contravention of § 353(f)(1)(A) causes the drugs to become misbranded. 21 U.S.C. § 353(f)(1)(C).

*United States v. Rojas*, Civ. No. 15-cr-0169, 2017 WL 2573073, *2 (M.D. Pa. June 14, 2017); *see also United States v. Goldberg*, 538 F.3d 280, 288 (3d Cir. 2008) (quoting *United States v. Arlen*, 947 F.2d 139, 141 n.2 (5th Cir. 1991) ("Any prescription drug that is dispensed without a prescription is deemed 'misbranded' as a matter of law.")). Here, it is without question that the drugs that were impermissibly administered to horses within twenty-four hours of a race, at Defendant's direction, were not administered pursuant to a valid prescription or order from a veterinarian. The only question for the court, then, is whether the drugs that were administered were also dispensed.

Defendant points to the testimony of Kevin Brophy, the lead veterinarian involved in the unlawful administration of prescription drugs to Defendant's horses on race days, wherein he agreed that "administer" and "dispense" had different meanings in the veterinary field. Brophy testified that, in his opinion, administering was the act of injecting substances into horses himself, while dispensing would occur if he were to sell drugs to a client, such as Defendant, for later use. This definition of "dispense" is consistent with Third Circuit precedent treating the act of selling a prescription drug to an end user as "dispensing." *See id.* at 288-89. However, the court sees nothing in the Act to suggest that there is some

temporal element required between the selling of a drug and its administration for a misbranding offense to be possible. Thus, the court simply must determine whether the jury had before it reliable evidence that Brophy or the other veterinarians sold prescription drugs to Defendant. At trial, the Government presented voluminous records from the veterinarians, including invoices for prescription drugs that Defendant purchased. The veterinarians and their staff also testified in detail about how they would receive the requests from Defendant for the administration of unprescribed prescription drugs to her horses, and the manner in which they would falsify and backdate the invoices to make it appear as though the drugs were given the day before races. The court finds that the evidence presented at trial was more than sufficient for the jury to find that prescription drugs were sold, and therefore dispensed, to Defendant. The court sees no basis for distinguishing between a hypothetical situation where the veterinarians would have dispensed the drugs to Defendant for her to then inject the horses, which Defendant appears to concede would be misbranding, and what occurred here, where the veterinarians would both dispense and administer the drugs themselves. Such a distinction would lead to an absurd and almost certainly unintended result that would allow those involved in the illegal scheme to skirt a misbranding charge by having veterinarians inject the drugs rather than the trainers or owners of horses. This seems to be in obvious contravention of the Act's plain language, which prohibits the doing of any act that

causes a drug to become misbranded after it has moved in interstate commerce and while it is held for sale. *See* 21 U.S.C. § 331(k). Directing veterinarians to inject specified prescription drugs into one's horses is no less the "doing of any other act" to cause a drug to become misbranded than if one were to inject the horses oneself.

Lastly, the court finds unpersuasive Defendant's argument that the holding in *United States v. Young*, 315 U.S. 257 (1942), applies to the Act or this case. In *Young*, the United States Supreme Court interpreted the Harrison Anti-Narcotic Act, an Internal Revenue Service statute unrelated to the Act, and held that administering physicians were exempt from the record-keeping requirements of the Harrison Act, while dispensing physicians were not. *Id.* at 258-61. The Court explained that, "Congress, by the use of the words 'dispensing physicians,' meant to exclude physicians administering to patients whom they personally attend." *Id.* at 259. The holding in *Young*, however, has no bearing on this case. That Congress decided to exempt administering physicians from certain requirements of one statute has no application to a different, wholly unrelated statute.

With regard to the Act, the court recognizes that "the purpose of § 331(k)'s misbranding prohibition was to 'extend the Act's coverage to every article that had gone through interstate commerce until it finally reached the ultimate consumer.'" *Goldberg*, 538 F.3d at 288-89 (quoting *United States v. Sullivan*, 332 U.S. 689,

696-97 (1948)). Here, Defendant was the ultimate consumer. She directed veterinarians to unlawfully dispense prescription drugs to her for which no valid prescription existed, she instructed the veterinarians to illegally administer those drugs to her horses on race days, and she then paid the veterinarians for both the drugs and the treatment of her horses. These acts fit squarely within the prohibitions of the Act, and the jury had ample evidence upon which to find that Defendant did in fact engage in the prohibited conduct.

## IV. Conclusion

Based on the reasons set forth herein, the court finds that there is no basis upon which to set aside the jury's verdict and enter a judgment of acquittal. Accordingly, Defendant's renewed motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 will be denied.

An appropriate order will issue.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: March 14, 2018